Katherine S. Clark (SBN 94871)
Law Offices of Katherine S. Clark
919 The Alameda
San Jose, California 95126
Telephone:  (408) 350-7523
                 (650) 289-9303
Facsimile:   (408) 436-8583

Attorneys for Plaintiff  TECHNOLOGY CREDIT CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| TECHNOLOGY CREDIT CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> KEY EQUIPMENT FINANCE, INC., KEY CORPORATE CAPITAL INC., <br><br> Defendants. | CASE NO.:  C08 03605 PVT <br><br> FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT |

Plaintiff, TECHNOLOGY CREDIT CORPORATION, hereby brings this action against Defendants KEY EQUIPMENT FINANCE, INC. and KEY CORPORATE CAPITAL INC.

## PRELIMINARY ALLEGATIONS

1.    JURISDICTION-- This action is a civil action over which this Court has original jurisdiction under 28 U.S.C. §1332.  The amount in controversy exceeds $75,000 and there is complete diversity of citizenship between Plaintiff and Defendants.

-1-    FIRST AMENDED COMPLAINT

2.    Plaintiff TECHNOLOGY CREDIT CORPORATION (hereinafter "TCC") is a corporation which was incorporated in California and is validly existing under the laws of the State of California, with its principal place of business in San Jose, California. Plaintiff is authorized to transact and is transacting business in the Northern District of California.

3.    Plaintiff is informed and believes and thereon alleges that Defendant KEY EQUIPMENT FINANCE, INC. is a corporation which was incorporated in Michigan and is validly existing under the laws of the State of Michigan, with its principal place of business in Superior, Colorado. Plaintiff is informed and believes and thereon alleges that Defendant KEY CORPORATE CAPITAL, INC. is the former name of KEY EQUIPMENT FINANCE, INC. Plaintiff is informed and believes that at all relevant times herein, Defendants were doing business in this judicial district.

4.    VENUE—The contract which is the subject matter of this lawsuit was entered into in San Jose, California. The agreement is expressly governed by the laws of the State of California.

5.    Plaintiff is informed and believes and thereon alleges that at all times relevant hereto each Defendant was completely dominated and controlled by its Co-Defendant and each was the alter-ego of the other.

6.    Whenever and wherever reference is made in this Complaint to any act by a Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly and severally.

## FIRST CAUSE OF ACTION
## (BREACH OF WRITTEN CONTRACT)

7.    Plaintiff hereby incorporates each and every paragraph set forth above,

1  as though fully set forth herein.

2      8.     On or about September 30, 2002, Defendant KEY CORPORATE

3  CAPITAL, INC. filed a Complaint against TCC in the Santa Clara County Superior

4  Court (Action No. CV811546). The Complaint alleged, among other causes of

5  action, breach of contract. TCC answered the Complaint and filed a Cross-

6  Complaint for damages. Following a series of mediation sessions, a settlement

7  agreement was reached.

8      9.     On or about August 24, 2004 in the City of San Jose, Santa Clara

9  County, California, Plaintiff TCC and Defendant KEY CORPORATE CAPITAL,

10 INC. entered into a Settlement Agreement and Release, a copy of which is attached

11 as Exhibit "A" and made a part of this Complaint. In accordance with the terms of

12 the Settlement Agreement, the Complaint and Cross-Complaint filed in Action No.

13 CV811546 were dismissed with prejudice. The Settlement Agreement superseded

14 all prior written agreements between TCC and KEY. All prior written agreements

15 were terminated by the Settlement Agreement, with the exception that Key agreed to

16 pay remarketing fees to TCC, if any arose, under the ongoing lease to BellSouth,

17 Equipment Schedule No. One to Master Lease Agreement No. R11046F (the

18 "BellSouth Lease," which was mistakenly referred to as Number R110401A in the

19 Settlement Agreement, Ex. A, Para. C(2).)

20     10.    Plaintiff TCC has performed all of its obligations under the Settlement

21 Agreement.

22     11.    Paragraph C(2)(a) of the Settlement Agreement provides: "If lease,

23 purchase or other revenues are received by Key from the BellSouth Lease beyond the

24 lease payments due during the Initial Lease Term, then Key will pay TCC a 30%

25 remarketing fee on all such post-Initial Lease Term revenues. These post-Initial

26 Lease Term revenues include any month-to-month lease payments...." Paragraph

27 C(2)(b) of the Settlement Agreement states: "Key will pay TCC the remarketing fee

28

described in subparagraph a. above within 30 days of receipt of any such post-Initial Lease Term revenues."

12.    Plaintiff is informed and believes that KEY received some post-Initial Lease Term payments from BellSouth beginning November 2, 2005 and ending June 2, 2006.

13.    Beginning in or about December of 2007, Plaintiff TCC demanded that KEY pay TCC the 30% remarketing fee in accordance with the terms of the Settlement Agreement.

14.    On December 13, 2007, Defendant KEY EQUIPMENT FINANCE (formerly KEY CORPORATE CAPITAL, INC.), through its Vice President and Senior Workout Counsel, admitted in writing that KEY had received eight post-Initial Lease Term payments from BellSouth. KEY asserted that a portion of each payment went to pay personal property and other taxes, leaving a net to KEY for each payment of $142,300.08. KEY admitted that 30% of the total balance ($1,138,406.40) is $341,591.92 which is the amount due and owing to Plaintiff.

15.    Defendants breached the Settlement Agreement by failing to pay Plaintiff the remarketing fees due pursuant to Paragraph C(2) of the Settlement Agreement.

16.    Despite Plaintiff's multiple demands for payment, Defendants have failed to and refuse to pay the sum of $341,591.92 which remains due and owing.

17.    As a result of Defendants' breach of the Settlement Agreement, Plaintiff has sustained damages in a sum in excess of $341,591.92.

18.    As a result of Defendants' breach, Plaintiff is entitled to an award of prejudgment interest at the rate of 10% per annum on the amount remaining due.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1        1.      Compensatory damages in the amount of $341,591.92 or an amount

2    according to proof;

3        2.      Prejudgment interest pursuant to California Civil Code §3289;

4        3.      Costs of suit incurred herein; and

5        4.      Such other and further relief as the court may deem proper.

6

7    Dated:  September 2, 2008

                                    LAW OFFICES OF KATHERINE S. CLARK

8

9

                                      By

10

                                      Katherine S. Clark

11

                                      Attorneys for Plaintiff TECHNOLOGY
                                      CREDIT CORPORATION

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (referred to herein as the "Agreement") is entered into as of August 24, 2004, by and between: Key Corporate Capital Inc. ("Key"), on the one hand; and Technology Credit Corporation ("TCC"), on the other hand; on behalf of themselves and their predecessors, successors, receivers, assigns, affiliated entities and subsidiaries, and their past or present owners, shareholders, partners, employees, agents, attorneys, representatives, officers, directors, and any other person, firm or corporation now, previously, or hereinafter, responsible by or through them. Key and TCC are collectively referred to herein as the "parties."

A.    RECITALS

1.    Key and TCC entered into an Equipment Acquisition Agreement (the "EAA"), dated October 10, 1988, by which TCC agreed to sell to Key equipment leases that TCC originated through referral programs with various vendors. Between 1988 and 2002, the parties entered into transactions for the sale from TCC to Key of thousands of equipment leases (the "Leases").

2.    On or about April 10, 1992, the parties entered into a Remarketing Agreement by which Key agreed to pay TCC a fee for certain remarketing events involving the disposition of leased equipment (the "Equipment") during and/or after the initial lease term. On or about October 14, 1997, the parties entered into an Amended Remarketing Agreement. The 1992 Remarketing Agreement and the 1997 Amended Remarketing Agreement are collectively referred to herein as the "Remarketing Agreements."

3.    A dispute arose between the parties regarding, among other things, whether TCC had failed to properly remit to Key all proceeds received from the Leases and the



Equipment, whether Key had fully paid TCC for remarketing fees, and whether TCC had defamed Key.

      4.     On September 30, 2002, Key filed a Complaint for Breach of Contract, etc. against TCC in the California Superior Court, for the County of Santa Clara, Action No. CV811546 (the "Action"). An Amended Complaint was filed on January 10, 2003. The Complaint and the Amended Complaint are collectively referred to herein as the "Complaint." The Complaint sought, among other things, actual and punitive damages for breach of contract, conversion, civil theft, intentional interference with contractual relations, trade disparagement, and defamation.

      5.     On or about April 2, 2003, TCC filed its Cross-Complaint ("Cross-Complaint") against Key in the Action, seeking, among other things, TCC's remarketing fees and other damages in connection with claims for breach of contract, conversion and accounting.

      6.     On August 24, 2004, the parties reached a settlement of this matter, as set forth in their Settlement Memorandum of that same date. They confirm and finalize that settlement by way of this Agreement.

      7.     The facts and circumstances referred to in this Section A, including any and all allegations that have been made or could have been made in the Complaint, the Cross-Complaint, or the Action, and anything related to or arising out of the EAA, the Remarketing Agreements, the Leases, the Equipment, or the defamation claims, at any point in time prior to the effective date of this Agreement, are hereinafter referred to as the "Dispute".

    **B.**     The parties wish to avoid the extensive time and further costs of litigation and, subject to and upon full satisfaction of the terms of this Agreement, to fully and finally settle and discharge all past and present claims, controversies, demands, actions or causes of action, which

they may have or claim to have against each other, which arise out of, or are in any way related to, the Complaint, the Cross-Complaint, the Action, the EAA, the Remarketing Agreements, the Leases, the Equipment, the defamation claims, or the Dispute.

      C.     For and in consideration of the covenants described below, the parties agree as follows:

      1.     Within 10 business days of receipt of a fully executed original of this Settlement Agreement, the parties will simultaneously exchange, through counsel, the following two checks:

          a.     TCC will pay Key the sum of Four Hundred Fifty Thousand dollars ($450,000.00); and

          b.     Key will pay TCC, or its designee, the sum of One Million Eight Hundred Fifty Thousand dollars ($1,850,000.00).

      2.     As set forth in the mutual release in paragraph D below, and subject to the other terms of this Agreement, the intent of this Agreement is to terminate all further obligations the parties have to each other with regard to the EAA, the Remarketing Agreements, the Leases and the Equipment, including without limitation, any obligation by Key to pay any additional or future remarketing fees to TCC. The one exception to the termination of these rights is that Key will pay remarketing fees to TCC, if any arise, under the ongoing lease to BellSouth, Number R110401A (the "BellSouth Lease"), which currently extends through October 31, 2005 (the "Initial Lease Term"), as provided below:

          a.     If lease, purchase or other revenues are received by Key from the BellSouth Lease beyond the lease payments due during the Initial Lease Term, then Key will pay TCC a 30% remarketing fee on all such post-Initial Lease Term revenues. These post-Initial

Lease Term revenues include any month-to-month lease payments, purchases of the equipment, lease renewals, and purchases or renewals prior to the expiration of the Initial Lease Term (in which event the present value of the rents not yet paid during the Initial Lease Term shall first be subtracted from the early purchase or renewal payment), as well as revenues from the sale, rental or lease of the related equipment to third parties.

    b.  Key will pay TCC the remarketing fee described in subparagraph a. above within 30 days of receipt of any such post-Initial Lease Term revenues.

    3.  Key will be entitled to receive the proceeds from the escrow account currently held by SNS Netsolve, currently thought to total approximately $77,500. To facilitate this payment, the parties will jointly execute the letter to SNS Netsolve attached hereto, marked as Exhibit 1.

    4.  TCC hereby waives provision number 11 of the August 24 Settlement Memorandum conditioning this settlement on resolution of the claims between TCC and its insurer, Golden Eagle. TCC represents that all such claims between it and Golden Eagle have been resolved, and accordingly TCC fully binds itself to this Agreement and the settlement contemplated hereunder.

    5.  Within 10 business days after exchange of the checks referenced in paragraph C.1 above, Key and TCC will jointly prepare and file a Request for Dismissal, with prejudice, of the Action, the Complaint and the Cross-Complaint.

  D.  For and in consideration of the covenants set forth in Section C above, and subject to the other terms of this Agreement, the parties agree as follows:

    1.  Except as to the Excluded Preference Actions described below, each party hereby releases, acquits and forever discharges the other party from any and all claims, demands,

actions, causes of action, obligations, damages, promises, controversies, and liabilities of any nature whatsoever, whether or not now known, suspected, disclosed, or claimed which it ever had, now has or claims to have against the other party, from the beginning of time to the effective date of this Agreement, arising out of or related to the following:

        a.    All claims described in, and all matters referred to in, the Complaint, the Cross-Complaint, and the Action, and any and all claims or causes of action, whether or not now known, disclosed or asserted, which might have been asserted in the Action, arising out of, based on, or in any way related to the EAA, the Remarketing Agreements, the Leases, the Equipment, the defamation claims, and/or the Dispute;

        b.    Any representations, statements or agreements made or actions taken by either of the parties with respect to any of the matters described or referred to in subparagraph a. above.

        2.    Other than as provided in this Agreement, the only exceptions to the general and mutual releases set forth above are any preference or other bankruptcy related actions filed against TCC in connection with Leases originated by TCC and then sold to Key, where Key actually received the lease or other payments alleged to constitute preferences (the "Excluded Preference Actions").

        a.    As of the date of this Agreement, the parties are aware of two Excluded Preference Actions:

        (i)    *Broadband Office, Inc. v. TCC dba Extreme Networks Credit Corporation,* filed in the United States Bankruptcy Court, for the District of Delaware, Case No. 01-1720 (GMS), dated December 23, 2003, and transferred on June 21, 2004 to the

United States District Court. for the District of Delaware, Case No. 04-CV-407 (GMS), alleging two preference payments totaling $771,875.07; and

(ii)    *PSINET Liquidating LLC v. TCC*, filed in the United States Bankruptcy Court. for the Southern District of New York, Case No. 01-13213 (REG), dated May 28, 2003, alleging five preference payments totaling $7,537,502.00.

b.    Key agrees to provide reasonable assistance to TCC in its efforts to obtain a dismissal of the Excluded Preference Actions; provided however, that this assistance does not and will not include the voluntary payment by Key to TCC or any other party, of costs or attorneys' fees incurred by TCC or any other third party in defense of the Excluded Preference Actions. TCC expressly reserves the right to pursue claims against Key for indemnity and defense costs related to these Excluded Preference Actions. By agreeing to allow TCC to make this reservation, Key does not agree that TCC has any right to pursue such claims and, on the contrary, Key hereby denies that TCC has such right and such claims.

3.    Each party understands and expressly waives any rights or benefits available to it under section 1542 of the Civil Code of California which provides:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

4.    Each party represents and warrants that as of the date of execution of this Agreement it has the sole right and authority to execute this Agreement on its behalf, and that it has not sold, assigned, transferred, conveyed, or otherwise disposed of any claim or demand relating to any right surrendered by virtue of this Agreement.

E.    With the exception of the Excluded Preference Actions referred to in Section D above, each party agrees never to commence, assist in any way, prosecute or cause, permit or advise to be commenced or prosecuted against the other party any action or proceeding based

upon any claims, demands, causes of action, obligations, damages, or liabilities of any nature whatsoever, whether or not now known, suspected, disclosed or claimed, which it ever had, now has, or hereafter may have or claim to have against the other party, from the beginning of time to the effective date of this Agreement, pertaining to the matters identified in Section D, above. It is the express intention of the parties to exclude from the provisions of this Section E, the Excluded Preference Actions described in Section D above.

F.    Each party agrees that if it hereafter commences, joins in, or in any manner seeks relief through any suit arising out of, based upon, or relating to any of the claims released hereunder, or in any manner asserts against the other party any claims released hereunder, then it will pay to the other party, in addition to any and all other damages caused thereby, all attorneys' fees incurred in defending or otherwise responding to said suit or claim.

G.    The fact that the parties are entering into this Agreement shall not at any time or place be taken or construed to be an admission on the part of either of the parties that any claim made in the Action existed or exists, and each party expressly denies the existence and validity of any such claim.

H.    Except as otherwise provided herein, each party fully understands that if the facts with respect to which this Agreement is executed be found hereafter to be different from the facts now believed to be true, it expressly accepts and assumes the risk of such possible difference in facts and agrees that this Agreement shall be and remain effective notwithstanding such difference in facts.

I.    This Agreement shall be binding upon and shall inure to the benefit of all the individuals and entities listed in the introductory paragraph of this Agreement and collectively referred to throughout this Agreement as Key, TCC, and the parties.

J.      This Agreement is in lieu of, supersedes and extinguishes all other agreements, negotiations, understandings, and representations which may have been made or entered into by and between the parties, including the Settlement Memorandum between the parties dated August 24, and constitutes the entire agreement between the parties. It is expressly understood and agreed that this Agreement may not be altered, amended, modified or otherwise changed in any respect or particular whatsoever except by a writing duly executed by an authorized representative of the parties.

K.      The parties shall each bear their own attorneys' fees and costs arising out of the Action and the negotiation, execution and implementation of this Agreement.

L.      This Agreement shall be governed by California law.

M.      This Agreement shall be interpreted and construed neutrally in accordance with the plain meaning of the language contained herein and shall not be presumptively construed against the drafters.

N.      This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but such counterparts together shall constitute one and the same instrument.

O.      Each party acknowledges and declares that it has read this Agreement, that it knows and understands the contents of the Agreement, that it fully understands and appreciates the words and terms and effect of this Agreement, and that this Agreement has been executed voluntarily.

P.      Each party acknowledges and declares that it has been represented by counsel throughout the litigation of the Action and with respect to the negotiation, execution and implementation of this Agreement and all matters covered by and relating to the Action and this Agreement, and that it has been fully advised by said attorneys with respect to its rights and

obligations and with respect to the execution of this Agreement.

Q.     WHEREFORE, the parties execute this Agreement and agree to be bound by its

terms.

KEY CORPORATE CAPITAL INC.                    TECHNOLOGY CREDIT CORPORATION

By: _____                   By: _____
        Karen L. Larson                                  Lawrence M. Clark

Its:  Director, Global Vendor Services         Its:  President


APPROVAL AS TO FORM:

Each of the undersigned attorneys states that the terms of the foregoing Agreement have

been read by and explained to his clients.

_____                        _____
BENJAMIN K. RILEY                              BRUCE C. PIONTKOWSKI
COOLEY GODWARD LLP                             ROPERS, MAJESKI, KOHN & BENTLEY
Attorneys for Key Corporate Capital Inc        Attorneys for Technology Credit Corporation

obligations and with respect to the execution of this Agreement.

      Q.    **WHEREFORE**, the parties execute this Agreement and agree to be bound by its

terms.

KEY CORPORATE CAPITAL INC.

By:_____
        Karen L. Larson

Its: Director, Global Vendor Services

TECHNOLOGY CREDIT CORPORATION

By:_____
        Lawrence M. Clark

Its: President


APPROVAL AS TO FORM:

      Each of the undersigned attorneys states that the terms of the foregoing Agreement have

been read by and explained to his clients.


_____
**BENJAMIN K. RILEY**
**COOLEY GODWARD LLP**
Attorneys for Key Corporate Capital Inc.

_____
**BRUCE C. PIONTKOWSKI**
**ROPERS, MAJESKI, KOHN & BENTLEY**
Attorneys for Technology Credit Corporation

November 4, 2004

Mr. Perry Barth
Controller
SNS Netsolve
9500 Amberglen Boulevard
Austin, Texas  78729

Dear Mr. Barth:

As discussed with Sharon Ruiz, in connection with the settlement of a lawsuit between Key Corporate Capital ("Key") and Technology Credit Corporation ("TCC"), Key and TCC have agreed that the escrow account SNS Netsolve currently holds for them, totaling approximately $77,500, shall be immediately paid to Key.  Please send a check for the entire amount currently in the escrow to Key c/o Jonathan Braun, Esq., Key Equipment Finance, 1000 South McCaslin Blvd., Superior, Colorado  80027.

In addition, all future lease payments owed in connection with any equipment lease originated by TCC and later sold to Key should be directed to Mr. Braun at the above address.

Please call Mr. Braun at (720) 304-1247, or Key's outside counsel, Ben Riley at (415) 693-2092, should you have any questions.  Thank you for your cooperation and prompt attention to this matter.

Very truly yours,                                     Very truly yours,


Karen L. Larson                                       Lawrence M. Clark

Key Equipment Finance                                 Technology Credit Corporation
Director, Global Vendor Services                      President

EXHIBIT 1

900n50 v5/SF
jfkq05!.DOC

November 4, 2004


Mr. Perry Barth
Controller
SNS Netsolve
9500 Amberglen Boulevard
Austin, Texas 78729


Dear Mr. Barth:

As discussed with Sharon Ruiz, in connection with the settlement of a lawsuit between Key Corporate Capital ("Key") and Technology Credit Corporation ("TCC"), Key and TCC have agreed that the escrow account SNS Netsolve currently holds for them, totaling approximately $77,500, shall be immediately paid to Key. Please send a check for the entire amount currently in the escrow to Key c/o Jonathan Braun, Esq., Key Equipment Finance, 1000 South McCaslin Blvd., Superior, Colorado 80027.

In addition, all future lease payments owed in connection with any equipment lease originated by TCC and later sold to Key should be directed to Mr. Braun at the above address.

Please call Mr. Braun at (720) 304-1247, or Key's outside counsel, Ben Riley at (415) 693-2092, should you have any questions. Thank you for your cooperation and prompt attention to this matter.


Very truly yours,                          Very truly yours,



Karen L. Larson                            Lawrence M. Clark

Key Equipment Finance                      Technology Credit Corporation
Director, Global Vendor Services           President




EXHIBIT 1

906650 v5/SF
jfxq051.DOC